The Rush-Copley Medical Center, Inc. with Pat Heller, Defendant's Affiliate. Hardly on behalf of the Defendant's Affiliate, Mr. Todd Heller. Hardly on behalf of the Defendant's Affiliate, Mr. Mark A. Sansoni. All right, thank you. Mr. Heller, on behalf of the Appellant, you may proceed. Good morning, and may it please the Court. My name is Todd Heller, and I am here on behalf of the Appellant, Norma Lovell. We are here because we are propounding that this Court should reverse the summary judgment that was entered on this case on the basis that, as a matter of law, Rush's disclosure of the Physician Employment Status Form was not confusing, misleading, unclear, or ambiguous in any way. We feel as though it was confusing, misleading, unclear, and ambiguous, and it did not, therefore, adequately inform the Plaintiff of Dr., and I can't pronounce his last name, so I'm just going to call him Dr. D., if that's okay with you, Dr. D.'s independent contractor status, and that, therefore, there is arguable conduct by Rush in this case that could lead a reasonable patient in these situations to believe that Dr. D. was an employee. But his name's not on the list. I mean, there's a whole list of employed physicians. So these are physicians employed by Copley. Your client turned the initial, the bottom of that, and Dr. D. is not on that list. He's not on the list, but also he's not, urology is not mentioned on the other consent form. So it is confusing, I agree, but there's 60 doctors listed. And that goes to the second point, and that is that we also feel that, or are also contending that as a matter of law, the Plaintiff's alertness and confusion to read and comprehend Rush's disclosure of Physician Employment Status Form is a question of fact as to the holding out element of the Plaintiff's cause of action. So you would take the position it's not dispositive. The mental state of the claimant or the Plaintiff is a factor to be considered. Correct. It's not dispositive. Correct. And, therefore, it would go to, you know, the final panel. The tribal issue. Yeah, it would go to the jury. Assuming this form is not ambiguous, it is clear as a bell, let's assume this form was just one line that said, Dr. D. is not an employee of this hospital and the client signed it, would her mental state be an issue still? Yes, I think so. I think so. And let me give you my thoughts and my reason is on this, and that is, you know, there's lots of cases on this. You know, since 1993 with Gilbert. And, you know, we look at it as, is Gilbert clear? Don't mind me having all this case law on point. So it's clear, but it's also somewhat confusing because what really did Gilbert do? And I look at Gilbert, and really Gilbert is a, when you look at Gilbert, it's got public policy dictates to it, and that's the reason for the Gilbert decision. They look at it and say, you know, and I can quote, but they're talking about the reality of the business in the modern hospital world, which has even gotten more of the way they've described it. And I'm quoting now from Gilbert when they're quoting the Wisconsin Supreme Court, hospitals increasingly hold themselves out to the public. Inexpensive advertising came as offering and rendering quality health services. It goes on, modern hospitals have spent billions of dollars marketing themselves, nurturing the image with the consuming public that they are full care modern health facilities. I'm skipping again. In essence, hospitals have become big business competing with each other for health care dollars. Look at the facts in this case. That's what happened. Goes to Kishwaukee Hospital emergency room. Kishwaukee Hospital, in essence, can't handle the situation. Decide they need the experts, urologists. Excuse me. They go to, what do they do? They don't pink out or say we're going to send her to Dr. D. They say we're going to send her to Rush Hospital. Body ambulance in a very, very bad state. You all have seen the state that she was in when she went to Rush Hospital. She wasn't going there to see Dr. D. She was going there because it's Rush. It's the modern hospital that is rendering these high quality cares. And then they talk about, in the public policy dictates from the Mississippi Supreme Court, if they, emergency room physicians, do their job well, the hospital succeeds in its chosen mission, profiting financially and otherwise from the quality of emergency care so delivered. On such facts, anomaly would attend the hospital's escape from liability where the quality of care so delivered was below minimally acceptable standards. That's what we're taught. She went to Rush. She went to Rush because that's where Kishwaukee sent her. What could she do? No. I'm, I mean, realistically in the modern world, no. I'm dying. Well, I mean, you have your point as intuitive appeal. We know that a patient in extremis or in a bad mental or physical state is realistically going to be inclined to go with the flow. But then the other part of the analysis is public policy. What is a hospital supposed to do if the person is not understaffed? How do they inform the plaintiff except by way of a form? That's the purpose of the form. Otherwise, there'd always be a tribal issue. There'd be no point. They'd always be holding out. How else can they convey to the patient other than in a written document? And I think that is really what Gilbert is looking at is, is there a reasonable expectation? Does she comprehend that? Well, let me ask you a point of question. Do the first two factors in Gilbert say anything about a patient's intellectual or physical condition? Or do they speak to what actions of the hospital would it convey to a person? I don't think, the first two factors in Gilbert don't talk about the patient's mental or physical state, do they? Specifically? I don't think they specifically, yeah, I don't think they specifically mention it. But I think it's implicit that if you're giving consent, that there's got to be a capability of giving consent. And so what they're doing, the holding out is the consent. I mean, that's really what you, and how can you give, how can you give consent? Is it the case law that says that a hospital must ensure understanding? No, and I think that, and you've seen, I mean, that's, I admit, okay, that's what a lot of the argument has been. I do, yes, I'm sorry, I think that Singelman, which went to the, yeah, which went to the, which went to verdict on the issue, I think that that does state that. They had the dual, they found that the form was confusing, and there was some element of confusion. You got it, yeah. But, so, I mean, that's why I asked you before, if the form wasn't confusing, you know, is Spiegelman still good law? You know, or is that just an added fact that Spiegelman, again, that went to, went to verdict? How's this, okay? And I don't know if that is the, if that's, yeah, but in my opinion, yes, I think that, you know, that's what it should be. I mean, I'm being candid. And I think that when I'm saying that, it is really the rationale behind, behind Gilbert, and that is, you know, let me, let me, Lamb versus Rosenfeld. First, the case law discussing the holding out element under Gilbert clearly does not require that the hospital ensure actual notice to defeat an apparent agency claim. Our court has stated that the focus of the holding out element is whether or not the patient knows, or should have known, that the physician is an independent contractor. So if you look at that as, as the public policy analysis that caused the court, the Supreme Court, to write Gilbert, to create Gilbert as law, the, and the holding out element is whether or not the patient knows, or should have known, that the physician is an independent contractor. You're saying, and the equation knows, you're saying it's inextricably tied up with the mental condition of the patient as to whether or not they would know, or be capable of knowing. Any emergent situation, the chaotic situation, I think, is the way Gilbert's position is. Although isn't it the situation in most cases when they end up at a second hospital? You're using an extremist, aren't you? Yes, yes. I mean, you're, you're, you're, you're, yes, so, so. The hospital's going to say, well, how do we ever, you know, protect ourselves if we automatically assume that a person's going to be, you know, in a bad physical state when they get there? What is the hospital supposed to do? Realistically, maybe there's nothing they can do in this situation. And maybe that's the rationale behind Gilbert. If you look at, look at York, okay, which is the really the only other Supreme Court case that, that discusses Gilbert. It's all, all the rest of it. Excuse me. Wouldn't that be just completely unfair to hospitals to put this requirement on them to make, making sure or having some sort of additional evidence that a person has a rational understanding of the forms they're signing? No. I mean, I'm being, okay. No, it's, it's the hospital. They're providing the care that my, my, my client, independent, independent contractor, the doctor's providing the care. The hospital is just a site where the care is being provided. No, they're, they're, they're, they're licensed. I mean, they're, they're, they're, they're credentialed. They're bringing them in. So, no, I don't think it is. The hospital, the hospital treats the patient, not the doctor. It's, it's, it's the, the reason Norma Martin went to Rush is to be treated by Rush. She is not going there for Dr. D. She is going there for Rush. And Rush is bringing in urologists. You're talking about throwing out this whole current agency thing and the hospital is always liable. Well, no. And, and, and, and, and I, I am not saying that, okay, because, and that's why I think it's a factual situation. Suppose you're going in with a finger, okay, and you've got a broken finger, you know, and, and you break your finger. But all I have to do then is a plaintiff to say, you know what, I was really drunk. That's how I broke my finger, so I don't remember anything. I mean, you could get by a summary judgment pretty darn easily on this current agency thing by basically saying, I don't remember signing that form. It's a question of fact whether they remember. It's a question of fact whether, okay, or not the patient knows or shouldn't have known that the physician is involved. Well, I mean, maybe that's a mundane question, but your client wasn't unconscious when she went in there, was she? Not at that point. She was pretty bad. She was on Dilaudid and she had either venous Dilaudid and. But she was given a form and she signed it. And her signature appears in there, correct? Your Honor. Okay. Right. I mean. You're dying, okay? No, I know what you're going to say, but it is her signature on the form, correct? You're dying, of course. Yeah. You're, you're, you're, you're sick. You're, you're, okay. You're, you're in bad shape. All right? Yes. Al? You're going to say anything. I mean, we all do it. We all do it. I mean, I know it's a cracker, but yes. And that's, and yes. And that, so what I'm saying is you go in, you break your finger. You're playing softball. Okay. And you go into. Actually, it happened to me once. Yes, it happened to me too. That's why I'm using the, okay. Yeah, it happened. Okay. It happened. I mean, that's why we, okay. And I walked in there and, and I said, thank you. And I said, thank you. And I was like, I'm on my way to the office.        I'm going to do it. I'm going to do it. And I think, I think I jammed my finger and I needed an X ray. And they say to me, okay. Here, sign your consent. You know, I'm the radiologist and the, what is that? Okay. Okay. Sure. No problem. Okay. I signed it. Question of fact, I go to the jury. You're, you know, I'm, you know, did you, yeah, I knew I signed it. Okay. Same thing. I go, I, and he goes, you're dying. Okay. Kishwaukee takes you to, to, to, to, to copy. You're on Guy Lawdon. You've gone by ambulance. You do think you're dying. Right. And so, so the question then is the focus of the holding out element is whether or not the patient knows or should have known that the physician is an independent contractor. And I think that that. That the should have known part is the part that the case sees on whether they were put on notice. You know, known, we all know what known is. You knew it. Well, okay. She testified she didn't know it. What should have known. And then the cases bring that a step further to say, well, she put on notice. Yeah. And that's, and I think that that's a question of fact. No, I, I, so, so I'm not saying that a jury, you know, I mean, you could, you could get my, my, my argument in front of a jury would, would be, you know, in some ways similar to this and added what my argument was in the, in the lower court. You know, this should be for, for a jury. We should, we should argue whether she knew or should have known at that point, you know, and, and, you know, if, if, if she was, what if the record said she was not alert, you know, and not oriented. Now, you know, she said, I don't remember anything. It does. She did go by ambulance. She was under what? Yeah. Can I ask the question? What is the, you know, the nurse?